IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Clifton, LLC, | Civil Action No.: 4:11-cv-01234-RBH |
| Plaintiff, | |
| v. | **ORDER** |
| Dewey W. Tadlock, | |
| Defendant. | |

This case stems from a contract between Charlie Alston[1] and Dewey Tadlock (hereinafter "Defendant") whereby Alston agreed to lease, and to exercise his option to purchase, property owned by Defendant. The matter is now before the court with Defendant's [Docket Entry 31] Motion for Summary Judgment filed on September 14, 2011. Plaintiff filed its [Docket Entry 38] Response in Opposition to the summary judgment motion on October 23, 2011, to which Defendant replied, [Docket Entry 42], on November 3, 2011.[2] For the reasons set out below, the court grants Defendant's Motion for Summary Judgment.[3]

## **Background**

This case stems from a series of lease agreements with options to purchase entered into

---

[1] Alston was a member of Clifton, LLC (hereinafter "Plaintiff"). (*See* Aff. in Opp. [Docket Entry 38-1] ¶ 2.) Alston passed away in 2006, and the administratrix of Alston's estate ultimately filed this lawsuit on behalf of Plaintiff in 2011. (*Id.* ¶¶ 2, 9.)

[2] The court notes that Plaintiff also filed a Motion to Strike portions of the Reply, [Docket Entry 43], on November 10, 2011. Specifically, Plaintiff seeks to strike Defendant's "reply to the extent that it raised the defense of laches." (Motion to Strike at 1.) Because this Order ultimately grants Defendant's Motion for Summary Judgment based on his statute of limitations argument, and not his laches argument, the Motion to Strike should be denied as moot.

[3] Under Local Rule 7.08, "[h]earings on motions may be ordered by the Court in its discretion. Unless so ordered, motions may be determined without a hearing." In this case, the court finds that the issues have been adequately briefed by both parties and that a hearing is not necessary.

between Alston and Defendant, involving property that Defendant owned in Darlington, South Carolina. Alston and Defendant executed the initial lease and option to purchase on August 10, 1999, which included an agreed upon purchase price of $300,000 for Defendant's property. (*See* Aff. in Opp. ¶ 10; Aug. 1999 Lease [Docket Entry 38-3] at 1-5.) The 1999 Lease was witnessed and notarized, and contained the language "Signed, sealed and delivered" above the parties' signatures. (Aug. 1999 Lease at 5.) The Lease, with an option to purchase, was renewed multiple times, with the last renewal occurring on July 17, 2000. (*See* July 2000 Lease [Docket Entry 38-7] at 1-4.) Again, that July 2000 Lease was witnessed and notarized, and contained the language "Signed, sealed and delivered" above the parties' signatures. (*Id.* at 4.)

It appears that Alston continually made payments to Defendant under the Lease. On March 15, 2005, Defendant indicated to Alston, by way of letter, that Alston would owe a balance of $22,375.51 on March 31, 2005. (Def. Letter [Docket Entry 38-4] at 1.)

On May 24, 2005, a fire damaged the building–known as the Tropical Lounge–located on Defendant's property. According to Plaintiff, pursuant to an oral modification of their "Contract," Alston had "paid for and maintained a fire insurance policy on the subject premises with [] Defendant being named as the owner of the premises." (Compl. [Docket Entry 1] ¶ 34.; Aff. in Opp. ¶ 15.) Plaintiff further asserts that, pursuant to the oral modification, the insurance proceeds were to be used to rehabilitate the property if a fire occurred, (Compl. ¶ 35), but that Defendant improperly received and kept the insurance proceeds instead, (Aff. in Opp. ¶¶ 15-16).

On November 23, 2005, Defendant transferred title to the property to Plaintiff, for an additional consideration of $30,168. (Deed [Docket Entry 38-5] at 1-2.) The Deed was witnessed and notarized, and contained the language "[s]igned, sealed and delivered" above the parties'

signatures. (*Id.* at 2-3.) The Darlington County Clerk of Court recorded the Deed on November 28, 2005. (*Id.* at 2.)

Alston died on December 10, 2006, and his sister, Gloria Alston, "reviewed his personal effects, documents, accounts, and real estate holdings" as administratrix of his estate. (Aff. in Opp. ¶¶ 2, 9.) Gloria Alston states that her brother had regularly discussed his business affairs with her in the past, and that he had informed her of the fire at the Tropical Lounge. (*Id.* ¶¶ 4, 8.) Upon reviewing the documents in her brother's office, Gloria Alston obtained copies of the Leases and the Deed that have been provided to the court. (*Id.* ¶¶ 10-14.)

On May 23, 2011, Gloria Alston, as administratrix, filed this lawsuit on behalf of Plaintiff. In the Complaint, Plaintiff asserts a cause of action for specific performance, and demands the following relief:

> A. For an order that defendant specifically perform the contract and deliver the property restored to the condition originally contracted for;
>
> B. In the alternative, for an abatement in purchase price to reflect the actual value of property received on the date of breach and the value of the premises at the date of execution of the agreement in the amount of $300,000, together with interest thereon;
>
> C. Alternately, granting specific performance of the contract, directing the Defendant to turn over the insurance proceeds, which are $300,000.00, less the last payment made of $30,168.00 to the Plaintiff together with interest thereon, so Plaintiff may restore the premises.
>
> D. Alternatively, Plaintiff requests the Defendant furnish an amount equal to the difference in purchase price paid and the value of the property as received from the Defendant as damages incurred, as and for the abatement in the purchase price in the sum of $275,000.00 plus interest thereon.
>
> . . . .

(Compl. ¶ 52.)

## Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

When no genuine issue of any material fact exists, summary judgment is appropriate. *Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences drawn from the evidence must be viewed in the light most favorable to the non-moving party. *Id.* However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986) (emphasis in original).

"[O]nce the moving party has met [its] burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show that there is a genuine issue for trial." *Baber v. Hospital Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992). The nonmoving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *See id.* Rather, the nonmoving party is required to submit evidence of specific facts by way of affidavits, depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

**Discussion**

Defendant moves for summary judgment on the ground that Plaintiff's claim is barred by South Carolina's three-year statute of limitations for breach of contract actions. *See* S.C. Code § 15-3-530(1) (establishing a three-year statue of limitations for "action[s] upon a contract, obligation, or liability"); *see also Carolina Marine Handling, Inc. v. Lasch*, 609 S.E.2d 548, 550 (S.C. Ct. App. 2005) ("As a general rule, a three-year statute of limitations applies to contract actions in South Carolina."). Defendant contends that Plaintiff's action is based on their Lease and an oral modification to that Lease regarding fire insurance, and is thus subject to the three-year statute of limitations. (*See* Motion for Summ. J. at 3.)

If the three-year statute of limitations set forth in § 15-3-530(1) is, in fact, the statute of limitations applicable to Plaintiff's claim, then the claim clearly should be dismissed as time-barred. Defendant appears to contend that the statute of limitations began to run on May 24, 2005–the date on which the fire damaged the Tropical Lounge. (*See* Def Reply at 4.) Plaintiff, on the other hand, specifically contends that the breach of the contract at issue occurred in December of 2005. (*See* Plf Resp. in Opp. at 14.) Regardless of which of those dates actually triggered the three-year statute of limitations, the court notes that Plaintiff still waited until May 23, 2011 to file the instant action. Thus, Plaintiff's Complaint is time-barred under § 15-3-530's statute of limitations, as it was filed more than five years after either of the above, suggested triggering dates.[4]

Plaintiff, however, makes two separate arguments in response to Defendant's assertion that the claim is time-barred. First, Plaintiff argues that the Lease, with option to purchase, is a "sealed

---

[4] Moreover, the court notes that Plaintiff does not appear to dispute that its claim is time-barred if governed by § 15-3-530(1)'s three-year statute of limitations.

5

instrument" governed by a twenty-year statute of limitations. Second, Plaintiff alternatively argues that this action pertains to an interest in land subject to a ten-year statute of limitations. The court will address each of Plaintiff's arguments in-turn.

I.   "Sealed Instrument"

Plaintiff argues that the statute of limitations has not expired because the Lease, with an option to Purchase, is a sealed instrument.[5] Section 15-3-520(b) of the South Carolina Code provides a twenty-year statute of limitations for "action[s] upon a sealed instrument." It is upon this section that Plaintiff asserts its argument.

Here, while neither party contends that they actually, physically attached a seal[6] to the Lease in question, Section 19-1-160 provides the following:

> Whenever it shall appear from the attestation clause or from any other part of any instrument in writing that it was the intention of the party or parties thereto that such instrument should be a sealed instrument then such instrument shall be construed to be, and shall have the effect of, a sealed instrument although no seal be actually attached thereto.

S.C. Code § 19-1-160. The South Carolina Court of Appeals recently discussed § 19-1-160 at length:

> The clear language of section 19-1-160 imposes a statutory rule of evidence and requires that the determination–of whether a non-sealed instrument should be considered a sealed instrument–be gleaned from the instrument. If it appears from a non-sealed instrument that the parties intended for the contract to be sealed, it will

---

[5] The court notes that it is not entirely clear as to which specific Lease Plaintiff references in its argument. However, upon review, all three of the Leases in the record appear to contain identical information in the sections material to this argument. Accordingly, for purposes of this Order, the court will refer only to the most recent, renewed Lease–the July 2000 Lease [Docket Entry 38-7].

[6] A "seal" is defined as "[a] piece of wax, a wafer, or some other substance affixed to the paper . . . on which a promise . . . is written," or "[a] design embossed or stamped on paper to authenticate, confirm, or attest; an impression or sign that has legal consequence when applied to an instrument." BLACK'S LAW DICTIONARY 1376 (8th ed. 2004).

6

be deemed sealed. We recognize that a non-sealed instrument may include provisions and indicia that evidence an intent that the contract "be construed [as] a sealed instrument." [S.C. Code § 19-1-160.]

*Carolina Marine Handling, Inc.*, 609 S.E.2d at 550-51. Thus, the question before the court is whether the Lease, with an option to Purchase, entered into between Alston and Defendant "clearly evidences an intent to create a sealed instrument." *Id.* at 552. Upon review, the court concludes that the Lease does not evidence such an intent.

The court begins by looking at the prior cases in which the South Carolina Court of Appeals has found that non-sealed agreements evidenced the requisite intent to seal. First, in *Treadaway v. Smith*, 479 S.E.2d 849 (S.C. Ct. App. 1996), the Court of Appeals determined that the inclusion of the attestation clause–"IN WITNESS WHEREOF, the parties have hereunto set their respective Hands and Seals in quadruplicate"–*along with* the additional statement "SIGNED SEALED AND DELIVERED" in a separation agreement entered into by former spouses was evidence of an intent to create a sealed instrument. *Id.* at 855.

Similarly, in *South Carolina Department of Social Services v. Winyah Nursing Homes, Inc.*, 320 S.E.2d 464 (S.C. Ct. App. 1984), the Court of Appeals likewise found the requisite intent to create a sealed instrument where the attestation clause stated that "the parties hereto have set their hands and seals" and was *followed by* the notation "L.S." adjacent to the contracting parties' signatures.[7] *Id.* at 467. The Court of Appeals has since specifically noted that "L.S. usually appears

---

[7] The court notes that the South Carolina Supreme Court also dealt with a similar issue in *Cook v. Cooper*, 38 S.E. 218 (1901), although it was not for purposes of a statute of limitation. As the South Carolina Court of Appeals recently summarized:

> In *Cook*, the validity of a deed was at stake, and appellants argued the "deed is void for the reason that it is not under seal." [*Cook*,] 38 S.E. at 21. While the deed lacked a seal "upon its face," the following three features were present: (1) the deed provided an attestation, "In witness whereof I hereunto sed [sic] my hand and seal this . . . . ;" (2)

7

on documents in place of, and serves the same purpose as, a seal." *Carolina Marine Handling, Inc.*, 609 S.E.2d at 551 (citations omitted).

However, also in *Carolina Marine Handling, Inc.*, the Court of Appeals determined that a non-sealed lease lacked evidence of an intent to create a sealed instrument. *Id.* at 551. In that case, the lease contained *only* the "standard" attestation clause–"IN WITNESS WHEREOF, the parties have hereunto set their hands and seals"–and the court concluded as follows:

> [S]uch generic language is common in non-sealed contracts of all types. Were we to construe this boilerplate attestation clause, *by itself*, as requiring a finding of intent to create a sealed instrument in an otherwise non-sealed instrument, we would likely transform the twenty-year statute of limitations into the standard period of limitations for contract actions in this state. We adhere to our general three-year statute of limitations for most contract actions and acknowledge the availability of the twenty-year limitations period where the contract clearly evidences an intent to create a sealed instrument.

*Id.* at 552.

Here, in the case *sub judice*, the court concludes that the parties did not intend to create a sealed instrument. Although "[t]he sophisticated parties to th[e] [L]ease [] could have easily manifested an intent to create a sealed instrument if they were so inclined," *id.* at 551, they failed to do so in this instance. As an initial matter, the body of the Lease lacks any express language indicating that it is to be treated as a sealed instrument. Moreover, in each of the above-cited cases in which South Carolina courts have found the requisite intent to seal, the instrument in question contained multiple indicia to evidence such intent. Specifically, in both *Treadaway* and *Winyah*

---

immediately adjacent to the grantor's signature was the word "seal;" and (3) the deed concluded with "Signed, Sealed and Delivered in the presents [sic] of [names and witnesses]." *Id.* The Supreme Court relied in part on the predecessor to section 19-1-160 and found that a sealed instrument had been intended.

*Carolina Marine Handling, Inc.*, 609 S.E.2d at 174 n.3.

8

*Nursing Homes, Inc.*, the instrument in question contained an attestation clause stating that the parties had "set their hands and seals,"[8] and also contained additional language regarding sealing–i.e., "SIGNED SEALED AND DELIVERED" in *Treadaway* and "L.S." in *Winyah Nursing Homes, Inc.* In addition, the "SIGNED SEALED AND DELIVERED" language used in *Treadaway* was notably in "conspicuous type." *Carolina Marine Handling, Inc.*, 609 S.E.2d at 551 (citing *Treadaway*, 479 S.E.2d at 855). Here, on the other hand, the Lease contains only the language "Signed, sealed and delivered" immediately above the parties' signature lines. (July 2000 Lease at 4.) Absent from the Lease is the bold and "conspicuous type" found in *Treadaway*. Further absent from the Lease is any attestation clause similar to the ones present in *Treadaway* and *Winyah Nursing Homes, Inc.* Plaintiff has cited to no cases that show the clause–"Signed, sealed and delivered"–is sufficient evidence, by itself, of an intent to seal. This court, sitting in diversity, remains mindful of its duty to "rule upon state law as it exists and [] not [to] surmise or suggest its expansion." *Burris Chem., Inc. v. USX Corp.*, 10 F.3d 243, 247 (4th Cir. 1993) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)). As the South Carolina Court of Appeals has cautioned, "were [the court] to construe [such a] boilerplate [] clause, *by itself*, as requiring a finding of intent to create a sealed instrument in an otherwise non-sealed instrument, [the court] would likely transform the twenty-year statute of limitations into the standard period of limitations for contract actions in this state." *Carolina Marine Handling, Inc.*, 609 S.E.2d at 552. Thus, because the Lease in our case contains only the clause "Signed, sealed and delivered," and no other indica sufficient to evidence

---

[8] Not only did the separation agreement in *Treadaway* include an attestation clause, but that clause also indicated that the parties had "set their respective Hands and Seals *in quadruplicate*." *Treadaway*, 479 S.E.2d at 855 (emphasis added).

an intent to seal, the undersigned finds that the parties did not intend for the Lease to be sealed.[9] Therefore, § 15-3-520(b)'s twenty-year statute of limitations does not apply.[10]

II. "Founded on Title"

Plaintiff alternatively argues that the statute of limitations has not expired because this action arises out of an interest in land. (*See* Plf Resp. in Opp. at 11.) Plaintiff's argument relies on S.C. Code § 15-3-350, which provides a ten-year statute of limitations for "[a]ction[s] founded on title or for rents or services." That section specifically provides the following:

> No cause of action or defense to an action founded upon a title to real property or to rents or services out of the same shall be effectual unless it appear that the person

---

[9] Plaintiff additionally notes that the last page of the Lease also contains a notary seal and "Probate" signed by a witness, which stated the following: "PERSONALLY appeared before me Cely Baker Reynolds and made oath that she saw the within named Dewey W. Tadlock and Charlie Alston sign, seal, and as their act and deed, deliver the within written Lease and Option to Purchase Real Estate and that she with Bertha E. Jackson witnessed the execution thereof." (July 2000 Lease at 4.) However, the court concludes that Plaintiff's reliance on the notary seal and "Probate" is insufficient to establish the parties' requisite intent to seal. First, the language in the "Probate" appears to mirror the clause "Signed, sealed and delivered" that appeared in the Lease immediately above the parties' signatures thereto. Thus, the "Probate" appears to contain nothing more than that witness's recitation of what she witnessed the parties execute in the Lease, and, as thoroughly discussed above, the court has already concluded that the sole clause "Signed, sealed and delivered" did not clearly manifest an intent to seal by the parties. Second, as noted by Plaintiff, the notary seal was placed on the Lease to satisfy South Carolina's "[p]rerequisites to recording" as set forth in S.C. Code § 30-5-30(A)(1)(e). (*See* Plf. Resp. in Opp. at 10.) There is nothing in the Lease itself to suggest that the notary affixed her seal for any other purpose than to comply with the state's recording prerequisites, and, again, as discussed above, the court has concluded that the Lease lacks evidence sufficient to show the parties intended the Lease to be a sealed instrument. *See, e.g., Republic Contracting Corp. v. S.C. Dep't of Highways & Pub. Transp.*, 503 S.E.2d 761, 766 (S.C. Ct. App. 1998) (concluding that § 15-3-520(b)'s twenty-year statute of limitations did not apply to engineer plans where "nothing in the plans themselves suggest[ed] that [the engineering company] affixed its seal and endorsement [to the plans] for any other purpose than to comply with the applicable licensing statutes")

[10] In addition to the cases specifically discussed above, this court's ruling is also persuaded by Judge Norton's decision in *Midwest Dredge and Excavating, Inc. v. Bay Pointe Homeowner's Association, Inc.*, No. 2:06-2021-DCN, 2007 WL 7141921 (D.S.C. May 15, 2007). The evidence of an intent to seal in *Midwest Dredge* was even stronger than the indicia present in our case. Specifically, the performance bond at issue in that case included the words "signed and sealed" above the signature lines and then the word "seal" was also included "[j]ust below the company names and above the signatures of the president . . . and the Attorney-in-Fact." *Id.* at *4. After conducting a review of the South Carolina Court of Appeals' decisions in *Treadaway*, *Winyah Nursing Homes, Inc.*, and *Carolina Marine Handling, Inc.*, Judge Norton ultimately concluded that "the parties [in *Midwest Dredge*] did not intend to create a sealed instrument." *Id.* at *5.

10

prosecuting the action or making the defense or under whose title the action is prosecuted or the defense is made, or the ancestor, predecessor or grantor of such person, was seized or possessed of the premises in question within ten years before the committing of the act in respect to which such action is prosecuted or defense made.

S.C. Code § 15-3-350. Upon review, however, the court concludes that Plaintiff's claim does not arise out of an interest in land.

Plaintiff argues that *Jenkins v. Brown*, 532 S.E.2d 302 (S.C. Ct. App. 2000), a South Carolina Court of Appeals case, supports a finding that Plaintiff's claim is governed by § 15-3-350's ten-year statute of limitations. The court disagrees. In *Jenkins*, the Court of Appeals determined that the ten-year statute of limitations applied to an action regarding the ownership rights to a tobacco allotment after its sale by a life-tenant. *Jenkins*, 532 S.E.2d at 303. In concluding that the ten-year statute of limitations applied, the Court of Appeals specifically noted "the historical precept that farm allotments run with the land." *Id.* at 305. Importantly, in our case, the title and ownership of the property in question are not in dispute. As a matter of fact, Plaintiff has provided the court with a copy of the Deed showing that Defendant transferred title to Plaintiff on November 23, 2005. (*See* Deed at 1-2.) Thus, the court concludes that Plaintiff's reliance on *Jenkins* is misplaced.

On the other hand, however, the court does find telling the South Carolina Court of Appeals' more recent decision in *Palmetto Co. v. McMahon*, 716 S.E.2d 329 (S.C. Ct. App. 2011). In *Palmetto Co.*, the Court of Appeals had to determine which statute of limitations–§ 15-3-530(1)'s three-year statute of limitations or § 15-3-350's ten-year statute of limitations–applied to an action "for collection of rent by distraint" for rent owed under a lease agreement. *Id.* at 330. The Court of Appeals began by noting that "[a] lease agreement is a contract," and further that "[s]ection 15-3-530(1) of the South Carolina Code [] provides the statute of limitations for an action upon a contract

11

is three years." *Id.* at 331 (internal quotations and citations omitted). Ultimately, the Court of Appeals concluded that "[a]lthough Palmetto Company titled its action as one for distraint, its claim for rent arose out of the lease, not its title to real property. Because a lease is a contract, the three-year statute of limitations applies." *Id.*

Here, the dispute arises out of the Lease, with an option to Purchase, entered into between Alston and Defendant, and the alleged oral modification thereto regarding fire insurance. Therefore, just as in *Palmetto Co.*, because the claim arose out of the Lease, and not the title to the property in question, § 15-3-350's ten-year statute of limitations does not apply. Rather, because the Lease is a type of contract, § 15-3-530(1)'s three-year statute of limitations applies. Assuming as true all of Plaintiff's allegations, the court is not unsympathetic to the situation in which Gloria Alston and Plaintiff find themselves. Statutes of limitation can render harsh results, but this court sitting in diversity cannot ignore them. Plaintiff's own allegations reveal that this case is nothing more than a dispute over the Lease and the proceeds of a fire insurance policy taken out by the parties pursuant to an alleged oral modification to the Lease. Ultimately, the court concludes that Plaintiff's claims are subject to § 15-3-530(1)'s three-year statute of limitations and are time-barred under the same.

## Conclusion

Based on the foregoing, it is therefore **ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED**, and this case is hereby **DISMISSED** *with prejudice*. All other pending motions are hereby found to be **MOOT**.

**IT IS SO ORDERED.**

                                             s/R. Bryan Harwell
                                             R. Bryan Harwell
                                             United States District Judge

Florence, South Carolina
March 16, 2012